IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : CRIMINAL CASE NO.: |
| EDD JASON HUGHES | : 1:16-CR-00451-ELR-JSA |

## REPORT AND RECOMMENDATION

Defendant is facing narcotics distribution and firearms possession charges, based in whole or in part on evidence obtained during his arrest by Atlanta Police Department ("APD") officers on March 17, 2016. The case is before the Court on Defendant's Motions to Suppress that evidence [16][39], which argues that the officers lacked probable cause to arrest and search him, as well as his Motion to Suppress Statements [28], which argues that his post-arrest statements to the officers were made involuntarily. Defendant has also submitted a Motion to Dismiss the Indictment [17], which argues that this federal prosecution (which follows a state prosecution for the same conduct) violates his right against double jeopardy. After convening an evidentiary hearing and considering the parties' legal briefs, Court **RECOMMENDS** that Defendant's motions all be **DENIED**.

I.     **BACKGROUND**

   A.     *The Evidentiary Hearing*

The Court convened an evidentiary hearing on October 12, 2017, at which the Government called APD Officer C. McGhee III [29]. A transcript of that hearing ["Tr."] is in the record at docket number 32. The following facts are derived from that transcript.

Officer McGhee was patrolling in his squad car at approximately 6:25 pm on March 17, 2006, in the area of Garnett and Forsyth streets in Atlanta, GA. Tr. at 8. He was with his partner, Officer Morrison. *Id.* While driving, Officer McGhee observed a man and a woman "walking southbound on Forsyth Street participating in what I believed to be was a hand-to-hand transaction of illegal narcotics." Tr. at 8-9. Specifically, Officer McGhee saw the man reach his hand out to the woman and the woman place her hand on top of the man's hand, in what appeared to be consistent with a method used to "pass something off discretely." Tr. at 9, 18. Officer McGhee concluded that the specific nature of this gesture suggested an illicit transaction, based on his training and five years of experience handling street-level drug violations. *Id.* at 8. Officer McGhee, who was driving, did not specifically see the object(s) being passed, but Officer Morrison reported that he saw the man carrying marijuana. *Id.* at 9, 19. (Morrison did not testify at the hearing).

At that point, Officer McGhee stopped the car, and the officers (who were in full uniform) exited onto the sidewalk. *Id.* at 9-10. The woman immediately stopped when she saw the officers, but the man (later identified as the Defendant) continued walking away. *Id.* When asked to stop, he did not. *Id.* After several commands to stop, the Defendant eventually stopped, and Officer Morrison walked him back to where Officer McGhee and the woman were standing. *Id*. at 10. According to Officer McGhee, "Mr. Hughes seemed very fidgety, he seemed very nervous, he never made direct eye contact, he seemed to be looking around as if he was looking for a way out, as if he might have been a flight risk." *Id.* at 10.

Thus, the officers pulled out handcuffs to attempt to restrain the Defendant. *Id.* Before they could restrain the Defendant, however, he pushed and attempted to punch Officer Morrison, and the Defendant took off running. *Id.* at 10-11. Officer McGhee chased the Defendant on foot, and Officer Morrison chased in the car. *Id.* Officer McGhee saw the Defendant discard various items as he ran, including what Officer McGhee believed were drugs and a gun. *Id.* at 12. Upon seeing that the Defendant had been carrying a gun, Officer McGhee discharged his taser, which stopped the Defendant. *Id.* at 12. After a small struggle, Officer McGhee was able to detain and handcuff the Defendant. *Id.*

Medical personnel arrived and removed the taser prongs from the Defendant, but he otherwise refused treatment. *Id.* at 12-13. The officers searched Defendant

incident to arrest and recovered ammunition, and substances that they believed were methamphetamine, prescription pills, cash and heroin. *Id.* at 13. After Defendant was detained, Officer McGhee retraced his steps and found marijuana that the Defendant had apparently discarded while running along with the discarded firearm. *Id.* at 13-14.

After he was detained, the Defendant exclaimed "I know I fucked up. I know I'm going to jail." *Id.* at 14. This statement was not made in response to any questions. *Id.* The Defendant did not appear to be under the influence of any drugs or alcohol or mental illness. *Id.* The officers had made no promises to him, had not threatened him, and other than having administered a taser during the chase, had not drawn any weapons. *Id.*

**B.**   *Procedural History*

After his arrest by APD, Defendant was indicted by a grand jury in Fulton County, Georgia for possession of heroin, possession of a controlled substance (Schedule II), willful obstruction of a law enforcement officer, possession of a firearm during a felony and possession of a firearm by a convicted felon. *See* Fulton County Indictment [17-1]. Thereafter, on April 14, 2016, Defendant entered a nolo contendre *Alford*-style plea to the firearms possession charge and a traditional guilty plea to the remaining charges. *See* Fulton County Conviction [17-2]. He was sentenced to various custodial sentences on the counts, all of which

were either suspended or commuted to time served.  *Id.*  More than eight months later, on December 21, 2016, a federal grand jury issued this indictment, which charges Defendant with possession with intent to distribute various controlled substances, possessing a firearm in furtherance of a drug trafficking crime, and being a felon in possession of a firearm.  *See* Indictment [1].

## II.   DISCUSSION

### A.   *Defendant's Motion to Dismiss [17]*

It is undisputed that Defendant has already been previously convicted of possession of a firearm as a convicted felon, drug trafficking, and other violations of the State of Georgia's criminal code based on the same events at issue in this case.

The Fifth Amendment to the United States Constitution "protects defendants against successive prosecutions for the same criminal offense." *United States v. Baptista–Rodriguez*, 17 F.3d 1354, 1360 (11th Cir.1994).  But "identical offenses are nevertheless different for purposes of the Double Jeopardy Clause when they are charged by separate sovereigns."  *Id.; United States v. Lanza*, 260 U.S. 377, 382 (1922) ("an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each."); *Abbate v. United States*, 359 U.S. 187 (1959); *Bartkus v. Illinois*, 359 U.S. 121 (1959).  Defendant criticizes the wisdom and fairness of these principles, although

candidly acknowledges that the "dual sovereignty" doctrine is binding on this Court based on current precedents.  *See* Motion [17] at 4-5.

Defendant invokes the Supreme Court's recent decision in *Puerto Rico v. Sanchez Valle, et al.*, __ U.S. __, 136 S.Ct. 1863 (2016).  In that case, the Court found that the Double Jeopardy clause barred the Commonwealth of Puerto Rico from separately prosecuting two defendants for the same transactions for which they had previously been convicted in federal court.  *Id.* at 1876-1877.  That case, however, did not eliminate or limit the dual sovereignty principle as it relates to successive State and Federal prosecutions.  Rather, the Supreme Court addressed a question entirely irrelevant to the Court here: whether a United States territory, such as Puerto Rico, is in fact a separate sovereign from the United States Government.  The Court answers that question in the negative at least as it relates to Puerto Rico.  *Id.*  The Court noted that the test of dual sovereignty turns on the "ultimate source" of the power undergirding the respective prosecutions.  *Id.* at 1871.  Because the Court found that the "ultimate source" of Puerto Rico's prosecutorial authority was statutory action by the U.S. Congress, the Court concluded that the Commonwealth of Puerto Rico was not a dual sovereign for purposes of the Double Jeopardy Clause.  *Id.* at 1874-1877.

*Puerto Rico* by its own terms has no impact on the application of the dual sovereignty doctrine to a prior prosecution by the State of Georgia.  To the

contrary, the Court reaffirmed the long standing principle that "the States are separate sovereigns from the Federal Government (and from one another)." *Id.* at 1871.  The Defendant here has not been previously convicted for the same conduct in the courts of Puerto Rico, Guam, the U.S. Virgin Islands, American Samoa, or any other U.S. territory.  Thus, *Puerto Rico* does not change the result that this Court is compelled to reach here based on binding precedent, which is to deny Defendant's double jeopardy challenge to his federal prosecution.  Defendant's Motion to Dismiss should be **DENIED**.

### B.     *Defendant's Motion to Suppress Evidence [16][39]*[1]

The APD conducted a search incident to Defendant's arrest and thereby obtained various items of evidence including suspected drugs and ammunition. The Defendant also discarded certain evidence during his flight, after the police had initiated a warrantless seizure.  Defendant argues that the police lacked probable cause to arrest him and therefore had no basis to engage in a warrantless search incident-to-arrest.

A warrantless arrest is constitutionally valid only when there is probable cause to arrest.  *See United States v. Watson*, 423 U.S. 411, 417 (1976); *United*

---

[1] Defendant filed an "Amended Motion to Suppress" on December 11, 2017 [39], but this filing appears in substance to simply be a post-hearing brief in support of the originally-filed motions.  Indeed, Defendant had not received leave to file any new motions to suppress so long after the motions deadline.  Thus, the Court will construe this filing as a legal brief.

*States v. Costa*, 691 F.2d 1358, 1361 (11th Cir. 1982).  Probable cause exists if, "at the moment the arrest was made, 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that [the suspect] had committed or was committing an offense."  *Dahl v. Holley*, 312 F.3d 1228, 1233 (11th Cir. 2002) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).  "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction."  *Adams v. Williams*, 407 U.S. 143, 149 (1972).  In determining whether probable cause exists, the Court "'deal[s] with probabilities . . . [which] are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"  *Illinois v. Gates*, 462 U.S. 213, 231 (1983) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).  Moreover, an officer is not required to resolve all inferences and all factual conflicts in favor of the suspect.  "An officer's decision to arrest a suspect may be objectively reasonable even though that officer has not specifically discarded every possible non-criminal explanation for the conduct that forms the basis for her decision to arrest a suspect."  *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1119 n.5 (11th Cir. 1992); *United States v. Pantoja-Soto*, 739 F.2d 1520, 1523-24 (11th Cir. 1984).

Police may also detain a suspect briefly for an "investigative stop" if they

have a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity. *Terry v. Ohio*, 392 U.S. 1 (1968). "Reasonable suspicion" requires a lesser quantum of factual support and certainty than does probable cause. *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990). Reasonable suspicion must, however, be more than just an "inchoate and unparticularized suspicion or hunch." *Id.*, 392 U.S. at 27. The officer must have "some minimal level of objective justification" taken from the totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 7-8 (1989). What is a "reasonable suspicion" is determined from the totality of the circumstances, *United States v. Sokolow* , 490 U.S. 1 (1989), including the collective knowledge of the officers involved. *United States v. Glinton*, 154 F.3d 1245, 1257 (11th Cir. 1998). The "determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000).

      1.    The Initial "Terry" Stop

Here, the encounter between the officers and Defendant began with a brief investigative stop. In other words, the Government does not claim that the officers possessed probable cause or argue that the officers effectuated any arrest by simply stopping the patrol car and approaching the Defendant and his companion. The Court agrees that this encounter began with nothing more than a brief *Terry* stop.

*See, e.g., United States v. Acosta*, 363 F.3d 1141 (11th Cir. 2004) (briefly detaining a driver during the effectuation of a search of his vehicle was a *Terry* stop, and was not so extensive and intrusive as to graduate into being an arrest).

Defendant does not specifically argue that the officers lacked reasonable suspicion to initiate this brief investigative seizure.[2]  In any event, the Court finds that Officer McGhee had reasonable suspicion.  Officer McGhee observed specific gestures that he explained were indicative of a hand-to-hand drug transaction, in which one individual's hand was placed on top of the other individual's open hand in a manner that would tend to conceal whatever object was passed.  He believed based on his training and five years of experience investigating street level drug dealing that this exchange represented an illegal drug transaction.

What is more, Officer Morrison reported that he (Officer Morrison) observed the male individual holding marijuana.  While McGhee did not observe the marijuana, Officer McGhee was entitled to assess the existence of reasonable suspicion based on the two officers' collective knowledge.  Also, upon seeing the

---

[2] Defendant argues that the officers' observations of Defendant's hand gestures did not give rise to *probable cause* to justify an arrest.  That argument is inapplicable, however, because the officers did not purport to arrest Defendant, and the Government does not contend that probable cause existed, on the basis of the suspected hand-to-hand drug transaction alone.  That observation may have led to the attempt to initiate an investigative seizure, but that did not require probable cause.  As discussed further below, Defendant was arrested on the basis of many more facts than just the suspicious hand transaction.

officers pull over and exit their car, the female suspect stopped, but the Defendant walked away and did not respond to several verbal commands for him to stop. Ultimately, after ignoring several commands, Defendant eventually submitted to the officers and stopped walking away.[3]

The Courts have generally upheld brief, investigatory stops in similar circumstances, based among other things on the observations of trained law enforcement officers of objectively suspicious behavior suggestive of a possible hand-to-hand drug transaction, and evasive conduct by the suspect. *See United States v. Ragland*, No. 1:10-CR-472-SCJ 2011 WL 4708778, *6 (N.D. Ga. August 16, 2011) (King, M.J.) (collecting authority), *report and recommendation adopted*, No. 1:10-CR-472-SCJ, 2011 WL 4708710 (N.D.Ga. Oct. 4, 2011); *United States v. Lopez-Garcia*, 565 F.3d 1306, 1313-1314 (11th Cir. 2009) (officers possessed reasonable suspicion of a hand-to-hand drug transaction where a car stopped in the street in a known drug area, an individual leaned into the open window, and then walked away upon seeing the police); *United States v. Johnson*, 599 F.3d 339, 345 (4th Cir. 2010) (officers possessed reasonable suspicion of a hand-to-hand drug transaction based in substantial part on their observations of "hasty, even furtive"

---

[3] The Defendant was legally "seized" not when the officers pulled over or asked him to stop walking, but only as of when he submitted to the officers' show of authority. *See United States v. Knight*, 336 Fed.Appx. 900, 903-904 (11th Cir. July 8, 2009) (unpublished).

hand gestures "much in keeping with an illicit handoff," along with attempted avoidance of the police); *United States v. Paulette*, 457 F.3d 601, 606 (6th Cir. 2006) (finding that "the officers had a reasonable suspicion that Paulette was engaged in criminal activity based upon his hand movements consistent with drug-dealing activity, efforts to evade the police upon noticing them, and presence in a high crime area.")

Therefore, the officers possessed reasonable suspicion to pull their patrol car over and at least briefly detain and question the Defendant.

### 2. The arrest

The brief *Terry* stop initiated by the officers lasted only a moment before the Defendant pushed and attempted to punch Officer Morrison, and then fled. During the flight, Officer McGhee saw the Defendant discard a gun and what appeared to be drugs. These facts were more than sufficient to provide the officers with probable cause to arrest. Indeed, the Defendant's resistance and obstruction of the officers through his assault and flight clearly alone constituted grounds for a felony arrest. *See* O.C.G.A. § 16-10-24 ("Whoever knowingly and willfully resists, obstructs, or opposes any law enforcement officer . . . in the lawful discharge of his or her official duties by offering or doing violence to the person of such officer or legally authorized person shall be guilty of a felony . . . .") That the officers observed Defendant possessing and discarding drugs and a firearm during this

flight provided further, independent, probable cause. *See United States v. Lane*, 2012 WL 12870351, *2 (M.D. Fla. December 13, 2012).

Therefore, the Defendant was properly under arrest as of when the officers conducted their search incident-to-arrest. There is no basis to suppress any of the fruits of that search or any of the other physical evidence obtained during the incident.

### C. *Defendant's Motion to Suppress Statements [28]*

Defendant also moves to suppress his statements to the officers upon arrest that "I know I fucked up. I know I'm going to jail" on the grounds that he made these statements involuntarily.[4] If a Defendant challenges the voluntariness of her statements to law enforcement, the Government bears the burden to show that the Defendant's statements were made voluntarily. *See Jackson v. Denno*, 378 U.S. 368 (1964). Determining whether a statement is voluntary depends on whether,

---

[4] Although the officers had not issued any *Miranda* warnings to Defendant, the Defendant does not argue any violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). Indeed, the obligation to warn under *Miranda* only relates to custodial interrogation by law enforcement and does not apply to an arrestee's spontaneous statements not made in response to interrogation. *See United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir.1978) ("[I]f a defendant shows that a confession was obtained while he was under custodial interrogation, the government then has the burden of proving that the defendant voluntarily waived his privilege against self-incrimination.") Defendant does not suggest that his statements were made in response to interrogation and does not refute the Government's characterization of those statements as being spontaneous utterances. Thus, there is no *Miranda* violation alleged or established on this record.

under all of the surrounding circumstances, the statement was the product of the accused's "free and rational" choice. *United States v. Jones*, 32 F.3d 1512, 1516 (1994); *see Arizona v. Fulminate*, 499 U.S. 279, 285–88 (1991). The Eleventh Circuit has stated:

> Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession. Isolated incidents of police deception, and discussions of realistic penalties for cooperative and non-cooperative defendants, are normally insufficient to preclude free choice.

*Jones*, 32 F.3d at 1517 (quotation omitted).

The primary focus of the voluntariness inquiry is whether there has been police overreaching. *United States v. Bernal–Benitez*, 594 F.3d 1303, 1319 (11th Cir. 2010). The Court looks to the totality of the circumstances to determine whether a confession was voluntary, "including the details of the interrogation and the defendant's characteristics." *Id.* Ultimately, the question is whether the defendant "made an independent and informed choice of his own free will, possessing the capability to do so, his will not being overborne by the pressures and circumstances swirling around him." *United States v. Rouco*, 765 F.2d 983, 993 (11th Cir.1985) (citation and quotations omitted). Among the non-exclusive factors to consider are the Defendant's education and intelligence, length of detention, length of questioning, the use of coercive interrogation techniques and

whether Defendant was advised of her constitutional rights. *Id.*

In this case, the Government established that the Defendant was not subject to any threats. The officers' weapons were holstered after the chase, and they did nothing specifically to elicit any incriminating statements at all. While the Defendant had been tased during the pursuit, there is no evidence that he was in any lasting pain or discomfort or suffered any injury as a result. Indeed, Defendant refused any medical attention other than for the paramedics to remove the taser prongs. *See United States v. Martinez-Perez*, 625 F.2d 541, 543 (5th Cir. Sept. 2, 1980) (affirming finding of voluntariness where a suspect made statements in a hospital after being shot, even though he was in "some discomfort," and had received sodium pentothal and a general anesthetic several hours earlier, because the circumstances as a whole supported the finding).

Plaintiff cites *Beecher v. Alabama*, 389 U.S. 35 (1967) in support of his motion to suppress. In that case, the suspect, who was already wounded from a gunshot, "was ordered at gunpoint to speak his guilt or be killed," and was thereafter confined in a prison hospital for five days in "intense pain," "feverish," and in a "slumber" from regular administrations of morphine. *Id.* at 37-38. In this context, the Supreme Court found that the suspect did not act voluntarily in signing prepared confessions. The instant case is obviously distinguishable, in nearly every respect. There is no evidence of any real injury, and in fact Defendant

refused treatment. There is no evidence of any threats or coercive conduct, or any questioning by the officers at all. And Officer McGhee testified that the Defendant did not appear to be under the influence of any drugs or alcohol. *See* Tr. at 14. Most importantly, there is no evidence of any overreaching or abuse by the officers.

Thus, the totality of the circumstances support a finding of voluntariness and the Defendant's motion should be denied.

With no other pending matters before the undersigned, this case is hereby **CERTIFIED AS READY FOR TRIAL**.

**IT IS SO RECOMMENDED** this 29th day of January, 2018.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE